IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH B. ROSS, | No. C 11-00094 CW |
|     Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND (Docket No. 33) |
|   v. | |
| GREGORY A. STRANGER; CORALIE K. STRANGER; THE STRANGER FAMILY 2003 TRUST; STRANGER PROPERTY HLDGS LLC, A FLORIDA LIMITED LIABILITY COMPANY; and DOES 1-100, inclusive, | |
|     Defendants. | |

On December 9, 2010, Plaintiff filed suit against Defendants in Marin County Superior Court, seeking to set aside purportedly fraudulent transfers of real property by Defendants. Plaintiff alleges a conspiracy to delay and hinder her ability to collect on a judgment against Gregory Stranger rendered in her favor in an earlier action. Among other things, Plaintiff seeks a preliminary injunction and appointment of a receiver to collect rents on Defendants' properties.

Defendant Gregory Stranger, formerly represented by counsel, is proceeding pro se and, on January 7, 2011, removed this action to federal court. Plaintiff moves to remand the case to state court. Docket No. 33. Mr. Stranger opposes the motion. His wife, Coralie Stranger, also proceeding pro se, has submitted a declaration in opposition to Plaintiff's motion for remand. Defendants Stranger Family 2003 Trust and Stranger Property Holdings LLC are represented by counsel, but have not taken a position in support of or in opposition to the motion to remand. Having considered all of the parties' submissions, the Court GRANTS Plaintiff's motion.

BACKGROUND

Plaintiff previously filed suit against Defendants Gregory Stranger, Coralie Stranger, the Stranger Trust, the Capital Defeasance Group, LLC and Successor Borrower Services in a dispute arising from Plaintiff's failed joint business venture with Mr. Stranger. <u>Elizabeth B. Ross v. Gregory Stranger, et al.</u>, Marin

2

County Superior Court, CV 083069 (original action). On August 20, 2010, a jury rendered a verdict in favor of Plaintiff against Gregory Stranger for breach of contract, breach of the covenant of good faith and fair dealing, fraud by intentional misrepresentation, negligent misrepresentation, fraud by failure to disclose and breach of fiduciary duty. The jury awarded Plaintiff $969,849.73 in damages against Mr. Stranger, as well as $1,500,000 in punitive damages, based on Mr. Stranger's malicious, fraudulent and oppressive conduct.

Prior to July 30, 2010, the Stranger Trust was title holder and equitable owner of five pieces of real property in California. Mr. and Mrs. Stranger are the sole trustees of the Stranger Trust. Plaintiff alleges that the properties were fraudulently transferred to Stranger Holdings in early August, 2010 in anticipation of a possible verdict for Plaintiff in the original action. The evidence indicates that Mr. and Mrs. Stranger were once domiciled in California, but are currently residing in Florida.

## LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal district court so long as the district court could have exercised original jurisdiction over the matter. 28 U.S.C. § 1441(a). Title 28 U.S.C. § 1447(c) provides that if at any time before judgment it appears that the district court lacks subject matter jurisdiction over a case previously removed from state

3

court, the case must be remanded. On a motion to remand, the scope of the removal statute must be strictly construed. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. Courts should resolve doubts as to removability in favor of remanding the case to state court. Id.

District courts have original jurisdiction over all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). When federal subject matter jurisdiction is predicated on diversity of citizenship, complete diversity must exist between the opposing parties. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373-74 (1978). In determining federal removal jurisdiction, diversity is must exist as of the time the complaint is filed and removal is effected. Strotek Corp. v. Air Transport Ass'n of America, 300 F.3d 1129, 1131 (9th Cir. 2002).

The existence of diversity of citizenship jurisdiction is based on an examination of the citizenship of the real parties in interest. Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980). The party asserting diversity jurisdiction bears the burden of proving diversity of citizenship. Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986).

4

DISCUSSION

I. Amount in Controversy

At the outset, Plaintiff asserts that Defendants have failed to establish that the amount in controversy exceeds $75,000. Defendants respond by pointing out that the complaint makes clear that Plaintiff intends to collect on a judgment in the amount of $2,469,849.73 issued in the original action. Compl. ¶ 8-9. The complaint alleges the fraudulent transfer of real property valued in excess of $3,000,000. Compl. ¶ 15. Based on the alleged fraud and conspiracy, Plaintiff seeks to set aside the transfers and attach the properties. According to Mr. Stranger's declaration, the annual rents for the contested properties exceed $100,000.

These allegations, however, fail to satisfy the requisite amount in controversy because they reflect the collateral effect of the judgment Plaintiff seeks in this action. Plaintiff seeks a judgment finding that Defendants engaged in unlawful fraud and conspiracy and setting aside the transfer of real property. "It is well settled that the amount in controversy requirement cannot be met by taking into account any collateral effect which may follow adjudication, whether by way of estoppel of the parties or otherwise." Rapoport v. Rapoport, 416 F.2d 41, 43 (9th Cir. 1969). In Rapoport the court held that it lacked subject matter jurisdiction to consider an action to set aside a divorce decree, because the action only affected the parties' interests in certain real property collaterally and not directly and, thus, the value

5

of the property could not be considered as part of the amount in controversy. Id. at 43.

Plaintiff also seeks exemplary damages for Defendants' alleged fraudulent, oppressive and malicious conduct. Compl. ¶¶ 19 & 25. "If made in good faith, punitive damages may be included in computing the amount necessary for federal jurisdiction." Davenport v. Mutual Ben. Health & Acc. Ass'n, 325 F.2d 785, 787 (9th Cir. 1963). However, "in cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the requisite amount]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (including punitive damages under Cal. Civ. Code § 3345 in determining whether the defendant satisfied its burden to show that the amount in controversy exceeded the requisite amount); see also, Guglielmino v. McKee Foods Corp., 506 F.3d 696 (9th Cir. 2007) (affirming application of the preponderance of the evidence standard where a complaint did not seek a specified amount of damages, but sought damages under statutory and common law, as well as punitive damages based on its fraud claim). "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." Sanchez, 102 F.3d at 404. The Ninth Circuit established the rule in Sanchez on the grounds that it is

6

consistent with Congress's intent to limit diversity jurisdiction. Id. at 401-04. Plaintiff has not alleged an amount of punitive damages that she seeks to recover. Because Defendants make no showing, by a preponderance of the evidence, that Plaintiff is more likely than not to recover in excess of $75,000 in punitive damages, this claim does not satisfy the amount in controversy requirement.

Therefore, Defendants have failed to meet the requirements of 28 U.S.C. § 1332(a) with respect to the amount in controversy.

II. Complete Diversity

Plaintiff argues that the Stranger Trust is a citizen of California and therefore its inclusion defeats diversity in this case. Gregory Stranger disputes that the Stranger Trust is a citizen of this state and further argues that the Trust's citizenship is irrelevant, because the trustees are the true parties in interest.

As noted earlier, 28 U.S.C. § 1332(a) provides for federal court jurisdiction in civil actions between "citizens of different States." The Supreme Court has explained that "citizens" for purposes of diversity "must be real and substantial parties to the controversy." Navarro Sav. Ass'n. v. Lee, 446 U.S. 458, 460 (1980) (citing McNutt v. Bland, 2 How. 9, 15 (1844)). Navarro stated that early cases held that only persons could be real parties to an action, and, while corporations suing in diversity have long been deemed citizens, unincorporated associations remain

7

mere collections of individuals. Id. at 461. Therefore, a "trust has the citizenship of its trustee or trustees." Johnson v. Columbia Prop. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). "[A] trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." Id. at 464. The Certificate of Trust for the Stranger Trust indicates that Gregory Stranger and Coralie Stranger have the customary powers of a trustee to administer, manage, protect and invest the trust estate.

To be a citizen of a state for purposes of diversity jurisdiction "a natural person must both be a citizen of the United States and be domiciled within the State." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989) (emphasis in original). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." Id. A person's old domicile is not lost until a new one is acquired, and a "change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." Lew, 797 F.2d at 750. Lew recognized various factors relevant to the determination of an individual's domicile, including current residence, voting registration and

8

voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in organizations, place of employment or business, driver's license and automobile registration, and payment of taxes. Id. Domicile is evaluated based on "objective facts," with no single factor controlling, and "statements of intent are entitled to little weight when in conflict with facts." Id. The existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed. Id.

Coralie Stranger executed a declaration on March 10, 2011, in which she testified to the following. She lives in Florida, and resides there year around. Her children attend school, and she conducts her personal and business-related banking and attends church in Florida. She has cars and a boat registered in her name in Florida. She has had an active Florida real estate license since 2003, and began working for John R. Wood Realtors in Florida in 2009. In addition, Mrs. Stranger has had an active California real estate license since 2004. She stated, "I maintain my [California] license as active with Frank Howard Allen Realtors," though she is not an employee with the company. She has not had an office "in California with Frank Howard Allen Realtors" since 2008. Mrs. Stranger did not testify as to when she relocated to Florida, but stated that she intends to remain there indefinitely. She did not testify to owning real property in Florida, nor did

9

she deny owning real estate or other personal property in California.

A printout from the Frank Howard Allen Realtors webpage,[1] dated January 25, 2011, includes Mrs. Stranger's name, image, and contact information. In addition, the webpage provides biographical information about Mrs. Stranger. It states that she "lived in Mill Valley for a number of years and now resides in Novato with her husband and sons." Mrs. Stranger's biography indicates an award from the company in 2007 and includes a list of memberships in various Bay Area and Marin County organizations. Counsel for Plaintiff also testified that he called the company's

---

[1] Gregory Stranger objects to the webpage printout as inadmissible hearsay. The Court finds that the webpage is not hearsay to the extent that it is offered to prove Mrs. Stranger's past and continued association with the Frank Howard Allen real estate agency. The Court also finds that the content of the website, including biographical information about Mrs. Stranger, constitutes non-hearsay admissions pursuant to Federal Rule of Evidence 801(d)(2). Rule 801(d)(2) provides that a statement is not hearsay if it "is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . ." Mrs. Stranger testified that she currently maintains an active real estate license through the company. She has an active phone line and voicemail box at the company's San Rafael office. Furthermore, the Court can reasonably infer from Mrs. Stranger's testimony that she had an office with the company prior to 2008. Together this evidence is sufficient to establish that she adopted the biographical statements included on the company website, authorized the statements, or that the statements were made in the course of her association with the company.

10

San Rafael Office on January 26, 2011, and reached Mrs. Stranger's voicemail.[2]

Gregory Stranger executed a declaration on March 10, 2011, testifying to the following. He lives in Florida, but he does not say when he moved there. He is registered to vote in Florida and has voted in recent elections in the state. He conducts his personal banking in Florida, and any cars or boats registered in his name are registered in Florida. He further testified to attending church in Florida, and participating in various "community activities" in the state. There is no indication that he owns real property in Florida. He did not indicate whether owns real property or other personal property in California, though he admits that the Stranger Trust did own property in California, and Stranger Holdings currently owns certain property in California. Mr. and Mrs. Stranger are the only members of Stranger Holdings. Some of the Stranger Holdings properties are leased, and, as noted earlier, the total annual rents for the leased properties exceed $100,000. From 2006 to 2008, the Stranger Trust had its principal place of business in California, before it relocated in early 2009 to Florida.

---

[2] Plaintiff's counsel's testimony that he reached Mrs. Stranger's voicemail box through the real estate agency's San Rafael office is not inadmissible hearsay to the extent that he testified to hearing a voicemail greeting, and Mrs. Stranger's statement that the caller had reached her is a non-hearsay admission. Testimony as to Mr. Stranger's voicemail greeting at IGX is similarly admissible.

11

As to his employment, Mr. Stranger testified that he is currently unemployed, and does not work for IGX, Inc. in San Francisco. J. Michael Koonce, President of IGX, executed a declaration, stating that Mr. Stranger did not work for IGX in December, 2010, nor in January, 2011, and he is not currently employed with the company. Counsel for Plaintiff testified that he called the IGX San Francisco office on January 26, 2011, and reached a voicemail box in which the greeting stated, "Hi, you have reached the desk of Greg Stranger. I am away from my desk. Please leave me a message." Mr. Stranger has not denied working for IGX in the past.

It is apparent that Mr. and Mrs. Stranger were domiciled in California in the past, but have changed their residence to Florida. At the time this action was filed and removed to federal court, Mrs. Stranger continued to conduct real estate business in California. Mr. Stranger appears to have conducted business through the IGX office in San Francisco at the time the action was filed and removed to federal court. He does not testify to any employment in Florida. The Strangers have not stated that they own real property in Florida or that they have relinquished all real property in California. Both are the sole owners of Stranger Holdings, a limited liability company, with significant real estate in California. Based on their declarations, it is not clear how long the family has resided in Florida. There is no evidence as to when the Strangers became involved with their

12

church, enrolled their child in Florida schools, or registered their cars and boats with the state.  They have not indicated that they have Florida drivers' licenses.  Because residence and mere statements of intent are not controlling, the Court finds that under the totality of the circumstances the Strangers have not satisfied their burden to show that they changed their domicile to Florida before this action was filed and removed to federal court. Lew, 797 F.2d at 751 (stating that there is a presumption in favor of a party's established domicile as against a newly acquired one).  Accordingly, complete diversity in this action is lacking. The Court lacks subject matter jurisdiction for this reason as well, and remand is appropriate.  Gaus, 980 F.2d at 566 (doubts as to removal are to be resolved in favor of remand).

    Plaintiff also argues that inclusion of Defendant Stranger Holdings, a Florida limited liability company, destroys complete diversity for purposes of removal.  In the Ninth Circuit, a limited liability company is a citizen of every state of which its "owners/members" are citizens.  Johnson, 437 F.3d at 899.  Mr. and Mrs. Stranger are the only owners/members of Stranger Holdings. Because the Strangers have failed to satisfy their burden to show that they changed their domicile to Florida before this suit was filed and removed, the Court finds that Stranger Holdings is a citizen of California.  For this reason as well, the diversity requirement is unsatisfied, and remand to state court is appropriate.

13

CONCLUSION

The Court finds that Defendants have failed to establish the required minimum amount in controversy and complete diversity of citizenship, and therefore the Court lacks jurisdiction and remand of the action to state court is warranted. The Court GRANTS Plaintiff's motion for remand. Docket No. 33. The clerk is directed to remand the file to the Marin County Superior Court. Defendants' motions to dismiss, Docket Numbers 5-8, are terminated.

IT IS SO ORDERED.

Dated: 4/14/2011

_____
CLAUDIA WILKEN
United States District Judge